**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| CECILIO I. TREVINO III and | ) |
| BRANDEN ROBBINS, | ) |
| | ) |
| | ) **CLASS ACTION COMPLAINT** |
| Plaintiffs | ) |
| | ) **FLSA COLLECTIVE ACTION** |
| | ) **COMPLAINT UNDER** |
| | ) **29 USC § 216(b)** |
| | ) |
| vs. | ) CASE NO.  3:18-CV-271 |
| | ) |
| BREMEN CASTINGS INC., | ) |
| | ) |
| Defendant | ) |

*PLAINTIFFS' CLASS ACTION AND FLSA COLLECTIVE ACTION COMPLAINT FOR*
*DAMAGES*

Come now the Plaintiffs, Cecilio I. Trevino III ("Trevino") and Branden Robbins

("Robbins"), by counsel, and for their Class Action and FLSA Collective Action Complaint

against the Defendant Bremen Castings Inc. ("Bremen Castings"), allege and say:

### I.  STATEMENT OF THE CASE

Plaintiffs bring this class and collective action lawsuit against Bremen Castings to

address class-wide wage and hour violations committed by Bremen Castings against its hourly-

paid employees.  Trevino and Robbins will serve as class representatives of different classes and

sub-classes of current and former employees of Bremen Castings who were victims of Bremen

Castings' class-wide wage violations.

Specifically, Bremen Castings is and has been taking illegal wage deductions from its

employees' pay checks for costs of work uniforms, the cleaning of work uniforms, work shoes,

deposits for work uniforms and equipment, personal protective equipment ("PPE") required for

1

work and company apparel.  These deductions are taken in violation of Indiana's wage statutes, as they violate Indiana's Wage Assignment Statute, I.C. 22-2-6-2, and result in the underpayment of wages in violation of the Indiana Wage Payment Statute, I.C. 22-2-5 and the Indiana Wage Claims Statute, I.C. 22-2-9. Those same illegal deductions violate the Fair Labor Standards Act ("FLSA"), particularly as the deductions cause overtime violations, because Bremen Castings is violating the FLSA's rule that wages (including payment of an overtime wage) must be paid free and clear, unconditionally, and not subject to any kickbacks.

Additionally, Bremen Castings is and has been underpaying its employees' wages on a class-wide basis as a result of a company-wide policy or scheme in which Bremen Castings fails and refuses to pay employees from their first principal work activity each day until their last principal work activity.  All hourly-paid Bremen Castings employees were similarly subjected to Bremen Castings' unlawful compensation scheme that required its hourly paid production employees to perform significant work prior to the official scheduled start time of each shift and to perform significant work after the official scheduled end of each shift.  Bremen Castings has not been paying its employees for this additional work time.  Generally, Bremen Castings has been paying employees based upon officially scheduled shift hours rather than actual, recorded hours of work.  Bremen Casting has accurate time records, but it ignores them.   This wage payment scheme is particularly troublesome, because Bremen Castings requires its employees to report to work and clock in significantly before scheduled shift times in order to perform actual work.  Each hourly-paid employee begins his/her work day by obtaining and donning substantial protective gear (called "PPE") and clothing, all of which is required by Bremen Castings (and for safety purposes) and all of which is integral and indispensable to the work performed by each employee.  Each employee also has to engage in work in order to walk to his work station.  The

2

employee is required to be at his/her respective work station and ready to work at his/her

scheduled working time and is required to stay at his/her work station until his/her scheduled

quitting time. Upon leaving the work station at the scheduled quitting time, the employee has to

walk back to the employee locker room, doff and put away his/her PPE, clean up and then clock

out and leave for the day.  Bremen Casting is not paying employees wages or overtime for all of

the required work donning and doffing PPE and clothing and walking to and from the locker

rooms where this required work is performed.  Bremen Castings actually has written Employee

Handbook policies announcing the fact that it will not pay employees for this required work

time:

> "The time clock is to be punched immediately before and immediately after work (do not punch IN more than 25 minutes early).  Employees will change clothes, shower and do other personal activities on their own time.  Employees must also punch out at any time they leave company property.
>
> i.      When punching in early, unless an exception is made or approved ahead of time, an employee's time punch will be rounded to their scheduled start time."

and

> "Employees are expected to be at their respective work stations on their scheduled working time and are expected to remain at their stations until scheduled quitting time, except for brief necessary personal absences.  There shall be no gathering around the time clock before quitting time."

Bremen Castings made these adjustments and deprived its employees of pay for actual

time worked despite the fact Bremen Castings' own time records showed its employees were

working more time than Bremen Castings was paying its employees.  Bremen Castings has been

using illegal time card rounding practices and has been intentionally failing and refusing to pay

employees for many minutes per day of required and actual work time.  All of Bremen Castings'

time card rounding practices were performed to Bremen Castings' benefit and to the harm and

detriment of Bremen Castings' employees.  Bremen Castings' illegal time card rounding practices (non-neutral time card rounding) and refusal to pay for work from the first principal activity (donning) through the last principal work activity (doffing) violate the FLSA and result in underpayment of overtime compensation.  In the same way, Bremen Castings' illegal time card rounding practices and refusal to pay for work from the first principal activity (donning) through the last principal work activity (doffing) result in the underpayment of wages, creating class-wide violations of the Indiana Wage Payment Statute, I.C. 22-2-5 (or in Trevino's case, individual violation of the Indiana Wage Claims Statute, I.C. 22-2-9).

Trevino and Robbins' class and collective action claims based upon Bremen Castings' illegal wage deductions and its illegal time card rounding practices and failure to pay for work from the first principal activity (donning) through the last principal work activity (doffing) are perfect for class treatment and will be easy to prove.  All of Bremen Castings' wage violations will be shown on the face of its pay stubs to employees and Bremen Castings' own time cards.

### I.  FACTUAL ALLEGATIONS

1.      Trevino is a resident of the State of Indiana, and is domiciled in Wyatt, St. Joseph County, Indiana.

2.      Robbins is a resident of the State of Indiana, and is domiciled in St. Joseph County, Indiana.

3.      Bremen Castings operates its iron foundry in Bremen, Marshall County, Indiana. Bremen Castings describes itself as a "manufacturer of gray & ductile iron castings for motor vehicle parts, valves & pipe-fittings, farm machinery, internal combustion engines, measuring & dispensing pumps, compressors, and lawn/garden equipment."  Based upon information and belief, Bremen Castings also manufactures parts for firearms.

4.      Trevino is a former employee of Bremen Castings.  He was hired on or about May 4, 2016 to work as an hourly-paid employee and worked until the date of his termination on February 23, 2018.

5.      Robbins is a former employee of Bremen Castings.  He was hired in approximately August 2017 to work as an hourly-paid employee and voluntarily resigned from employment in approximately March 2018.

6.      Bremen Castings pays or paid Trevino, Robbins and their fellow employees on an hourly-paid basis.  Trevino, Robbins and their fellow manufacturing employees are non-exempt for FLSA overtime purposes.  Trevino, Robbins and their fellow manufacturing employees routinely work some overtime hours (hours in excess of forty) during some workweeks through the year.

7.      Bremen Castings subjected Trevino, Robbins and all of its hourly-paid employees to illegal wage deductions, including but not limited to, deductions described on pay stubs in some or all of the following categories: "Company Apparel," "PPE," "Shoes," "Uniform" and "Uniform Deposit."   The pay stubs show the amount deducted that pay period and the year to date ("YTD") amount deducted for the pay year.  Pay stubs will show the total amounts deducted from all employees in these categories for each pay period and each year.

8.      Plaintiffs are specifically alleging that Bremen Castings has taken illegal deductions in violation of the Indiana Wage Assignment Statute, I.C. 22-2-6-2, and in so doing, Bremen Castings has failed and refused to pay Trevino, Robbins and each and every other similarly situated employee his/her wages in full in each and every week Bremen Castings took one of these pay roll deductions in one or more of the categories labeled  "Company Apparel," "PPE," "Shoes," "Uniform" and "Uniform Deposit."

9.      Plaintiffs are also alleging that Bremen Castings has and had no legal authority to dock the wages of its employees to cover Bremen Castings' own business expenses, nor did Bremen Castings have signed, written authority from its employees, including Trevino and Robbins, which complies with I.C. 22-2-6-2 and would allow Bremen Castings to dock its employees' wages to cover costs in the different categories described above.  To be clear, Bremen Castings is not selling uniforms, PPE, shoes and other items to its employees.  Bremen Castings is requiring its employees to wear uniforms, steel toed shoes and PPE for work.  Bremen Castings rents or loans PPE and other apparel to its employees and charges employees for these materials.  It also takes deposits to cover costs of these items.  Bremen Castings also charges employees for the cleaning of the uniforms Bremen Castings requires its employees to wear.  Bremen Castings makes deductions from the pay of an employee for uniform cleanings regardless of whether or not that employee utilizes the cleaning service.  Bremen Castings is forcing its employees to pay, through a wage deduction, a portion (or all) of Bremen Castings such costs.  Moreover, Bremen Castings requires the employees to return any uniforms and PPE upon the termination of the employee's employment.

10.      All wage deductions Bremen Castings took from Plaintiffs' wages without wage assignments that fully complied with the requirements of I.C. 22-2-6-2(a) are illegal and created violations of the Indiana Wage Payment Statute and/or Indiana Wage Claims Statute, regardless of whether or not the deduction was taken for a reason which would have been permitted under I.C. 22-2-6-2(b).  This would include deductions for "company apparel."  Separately, all other deductions taken for the loan or rental of uniforms, cleaning of uniforms, shoes, PPE, and deposits for uniforms and PPE are simply unlawful altogether and resulted in violations of the Indiana Wage Payment Statute and/or Indiana Wage Claims Statute.

11.     All wage deductions Bremen Castings took from Trevino, Robbins and any other employee's wages during weeks in which the Plaintiff also worked overtime constitutes and FLSA overtime violation for failure to pay all overtime free and clear and not subject to any kickback.  This would include all deductions taken from Plaintiffs' wages that would constitute "facilities" and be required by Bremen Castings for the job, which includes deductions in the categories labeled "PPE," "Shoes," "Uniform" and "Uniform Deposit."

12.     Bremen Castings utilizes a time clock that records the time each employee begins his actual work each shift and records the time an employee ends his actual work each shift.  If Bremen Castings paid its employees' wages and overtime based upon these time clock punches, Bremen Castings would likely be in compliance with the FLSA and with Indiana wage statutes, at least regarding its payment of hourly-based wages for hours of work performed.

13.     Bremen Castings does not pay its employees' wages and compensation based upon its own time clock records.

14.     Importantly, Bremen Castings does not record its hourly-paid employees' work time in any other way.  The only time records Bremen Castings has to base its payment of hourly-paid wages are the time records generated by the employee time clock punches.

15.     At its Bremen, Indiana facility, for a lengthy period of time, Bremen Castings has employed a practice whereby it significantly adjusts downward and deducts time from its hourly-paid employees' time records and pays its employees for less than their full time worked.

16.     Based upon its long-standing practice of manipulating and downwardly adjusting employee time records, Bremen Castings has been systematically underpaying its employees significant sums of wages and overtime on a daily basis.  Many employees, including Trevino and Robbins, have been underpaid wages and overtime compensation by up to thirty (30)

minutes per shift.

17.     Each Bremen Castings hourly-paid production worker begins his/her shift by clocking in to record his/her work start time.  The employee then reports to a locker room to change clothing and begin to obtain and don protective gear (called "PPE") that is required by Bremen Castings (and likely by law) in order for the employee to perform work in the foundry. The employee dons at least some of this required "PPE" at his/her locker in a Bremen Castings locker room immediately after clocking in.  The employee also has an area near the time clock and locker room to check his/her work assignments.  The employee then walks to his/her work station.  At the work station, the employee dons the rest of his/her required PPE to prepare to begin his/her production work for the day at his/her work station.  Bremen Castings requires each employee to perform all of the above-described work, donning PPE, changing clothes, learning work assignments and walking in PPE to the work station prior to an officially scheduled shift start time.  Further, Bremen Castings requires that each employee be fully dressed, already-equipped with PPE and ready to begin production work at his/her work station at this scheduled shift start time.

18.     All of the time employees change into required uniforms and PPE, walk and complete donning of PPE is work time and must be compensated under the law.  Bremen Castings does not and has not paid Plaintiffs and all similarly situated employees for any of this work time from the time of each employee's first principal activity (donning work clothing and PPE) as is required by law.

19.     Bremen Castings actually has long-standing statements in its Employee Handbook issued to Plaintiffs and all similarly situated employees announcing Bremen Castings' intention/refusal to pay wages for this required work time.  That policies state:

"The time clock is to be punched immediately before and immediately after work (do not punch IN more than 25 minutes early). Employees will change clothes, shower and do other personal activities on their own time. Employees must also punch out at any time they leave company property.

    i.     When punching in early, unless an exception is made or approved ahead of time, an employee's time punch will be rounded to their scheduled start time."

and

"Employees are expected to be at their respective work stations on their scheduled working time and are expected to remain at their stations until scheduled quitting time, except for brief necessary personal absences. There shall be no gathering around the time clock before quitting time."

20.    Plaintiffs and their similarly situated production coworkers were required to continue production work and remain in their required PPE at their work stations until their "scheduled quitting time." Bremen Castings stopped paying wages to employees at this scheduled quitting time, but employees had to spend additional time working before they could clock out and leave work. Employees would have to doff, clean (if necessary) and put away all of their required PPE. This took significant time. Employees would have to walk back to the locker room and doff their remaining PPE and change clothes (and shower, if necessary). Only after all of this work was performed to the final principal work activity of the day (final doffing of PPE and clothing), could the employee clock out for the day and leave the Bremen Castings facility.

21.    Plaintiffs work or worked in an iron foundry. The work requires significant attention to safety and requires significant, required clothing and safety gear. Required uniforms and PPE for the Plaintiffs included any and all of the following: safety glasses, ear plugs or hearing protection, eye goggles, face shields, protective sleeves (green sleeves), leather aprons, different gloves, which include leather gloves, anti-vibration gloves and knit gloves, steel-toed

9

boots, dust masks, and green caps (worn on the head).  It takes significant time to procure and don this PPE at the beginning of the work day and it takes significant time to doff, put away and or clean this PPE at the end of the work day.  This substantial don and doffing work occurred each and every shift and Bremen Castings was not and is not paying hourly employees for this required and necessary work time.

22.    Pursuant to its systematic, class-wide practice, Bremen Castings is not compensating its hourly-paid employees for all work time at the beginning of each employee's shift from the time the employee clocks in and begins changing into his uniform and required PPE.  Additionally, pursuant to its practice, Bremen Castings systematically deducts time from its employee time records that represents time spent working by the employee after the scheduled shift end-time ("scheduled quitting time"), even though the work doffing PPE, walking back to the locker room, storing and cleaning PPE, and changing clothes and doffing the remaining PPE was performed and recorded on Bremen Castings' time keeping system.

23.    All of Bremen Castings' time rounding practices were performed to Bremen Castings' advantage and to the detriment and harm of Bremen Castings' employees.  Bremen Castings' time card rounding practices are not neutral.

24.    Bremen Castings intentionally and knowingly violated its employees' rights to earned wages through Bremen Castings' illegal time card rounding practices and the company's conscious and deliberate decision not to pay employees for all work time related to the donning and doffing of PPE and required uniforms and all related work activities which occurred before the official shift scheduled start time and the official scheduled quitting time.

25.    To provide more detail, when an employee clocks in at the beginning of a work shift, the employee's time punch is rounded **up** to the scheduled shift start time.  For example, if

an employee is scheduled to begin work at 9:00 p.m., but clocks in at 8:45 p.m., the employee's time record is rounded **up** to treat the employee as though she clocked in at 9:00 p.m.  This is true even though the employee is working prior to this scheduled shift time.  When an employee clocks out at the end of her work shift, that employee's time is rounded **down** to the scheduled shift end time.  For example, if the employee is scheduled to finish work at 5:00 a.m., but actually clocks out at 5:15 a.m., that employee's time record is rounded **down** to treat the employee as though she clocked out at 5:00 a.m.  Again, this is true even though the employee is working after the scheduled shift end time and works up until she clocks out.

26.     Systematically, Bremen Castings rounds time off both ends of its employees' work shifts to benefit Bremen Castings and to harm employees.  Bremen Castings underpays wages to its employees by its use of this rounding system.  If employees were paid wages on a continuous work day basis - paid from actual, first principal work activity (recorded with an actual time punch in) to the actual last principal work activity (recorded with an actual time punch out) - employees would be paid more wages and more overtime on a daily and weekly basis.

27.     During many calendar weeks in 2016, 2017 and/or 2018, Trevino and Robbins worked in excess of forty hours and were owed additional overtime compensation based upon Bremen Castings' unlawful time rounding.  In every work week, Trevino and Robbins lost wages as a result of Bremen Castings' unlawful time rounding.  In every work week involving more then forty hours of work, Trevino and Robbins lost overtime wages as a result of Bremen Castings' unlawful time rounding.  The same is true about overtime and unpaid wages for all of Plaintiffs' similarly situated, hourly-paid coworkers in the period of time covered by this lawsuit – April 2015 to the present.

28.    Bremen Castings has intentionally, knowingly, with reckless disregard and systematically violated its employees' rights to earned wages through Bremen Castings' illegal wage deduction practices, its illegal time card rounding practices, and its illegal treatment of required, work time (donning/doffing of PPE, walking to work stations) as unpaid time.  Bremen Castings intentionally, knowingly, with reckless disregard and systematically violated Trevino, Robbins and all similarly situated employees' rights to be paid earned wages and to be paid earned overtime compensation.  Bremen Castings deliberately and intentionally implemented illegal wage deductions, an illegal time card rounding system, and illegal wage policies in order to pay less in wages and overtime to its employees than it owed and less than was reported and earned by the employees.

29.    Particularly because Bremen Castings had (and still has) records of its employees' pay roll deductions and their full time worked and simply chose to adjust and reduce the amount of time and wages it paid its employees for work performed, it is clear that Bremen Castings knowingly and willingly failed and refused to pay Trevino, Robbins and their fellow hourly-paid coworkers for all time worked.

### III.  CLASS AND COLLECTIVE ACTION ALLEGATIONS

30.    Plaintiffs incorporate herein by reference paragraphs 1 - 29 above.

31.    Trevino and Robbins are pursuing claims individually, but this Complaint is brought also as a collective action and as a class action on behalf of other current and former Bremen Castings employees who were similarly denied payment of wages and overtime compensation under Bremen Castings' compensation scheme that involved unlawful wage deductions and the failure to pay for all work time from the first principal activity each day through the last principal activity.  This includes unpaid wages and overtime caused by the

12

manipulation of time records and the failure to pay wages for work at the beginning and the end of Bremen Castings' employees' shifts.

32.    This action is filed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 USC § 216(b), on behalf of Trevino, Robbins and all Bremen Castings current and former employees who were damaged by Bremen Castings' compensation system which required and resulted in uncompensated work by Bremen Castings' employees.  By virtue of the "collective action," Trevino and Robbins represent the identical and/or similar interests of former and current coworkers denied wages and overtime compensation under the same circumstances.  Trevino and Robbins anticipate that other Bremen Castings employees and former employees will opt in to the action.

33.    With respect to FRCP 23(b)(3) class action claims under the Indiana Wage Payment Statute, Robbins will serve as class representative over a proposed class.  The class will be as follows:

> Robbins will serve as class representative for the class-wide claims brought under the Indiana Wage Payment Statute.  This Court has supplemental jurisdiction over Robbins' Indiana statutory wage claims.  This action is filed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of Robbins and on behalf of all eligible Bremen Castings current and former employees (who voluntarily resigned) who work or worked for the company and were damaged by Bremen Castings' compensation system which required and resulted in unlawful wage deductions and in uncompensated work performed by hourly-paid employees.  By virtue of the class action, Robbins represents the identical and/or similar interests of former and current coworkers denied wages under the same circumstances.

34.    Based upon information and belief, the number of potential class members is believed to be several hundred or more individuals, however, the actual number of Bremen Castings' current and former employees who will be members of this collective action/class action is so great (numerosity) that joinder of all members is impractical.  Instead, Trevino and

Robbins will pursue discovery to obtain the names of the other current and former Bremen Castings employees, to provide notice of the collective action, and to offer the opt in opportunity, and to provide notice of the class action and to offer the opt out opportunity.

35.     Particularly with the types of wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire collective group/class.

36.     Trevino and Robbins' claims are typical of the claims of the whole collective group of current and former Bremen Castings hourly-paid employees harmed by Bremen Castings' illegal wage practices.  Trevino and Robbins claims are typical of the claims of the whole class of current and former Bremen Castings hourly-paid employees harmed by Bremen Castings' illegal wage practices.

37.     Trevino and Robbins will act to fairly and adequately protect the interests of the entire collective group of current and former Bremen Castings employees.  Robbins will act to fairly and adequately protect the interests of the entire Rule 23 class of current and former Bremen Castings employees.

38.     A "combined"[1] collective action/class action is superior to other available means for the fair and efficient prosecution of these wage claims against Bremen Castings.  For example, to prove Bremen Castings' illegal wage practices, Trevino, Robbins and other members of this collective group/class would seek in discovery records about all similarly situated current and former Bremen Castings employees who were similarly denied earned wages and overtime compensation under Bremen Castings' compensation system which required unlawful wage deductions and also resulted in uncompensated work through illegal and non-neutral time record rounding practices, all of which harmed hourly-paid employees.  Individual lawsuits by the

members of the collective group/class could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds. Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

39.     A determination regarding the "similarness" of those able to participate in the collective action/class action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages. Particularly with the type of FLSA and Indiana statutory and contractual wage violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under the FLSA and Indiana law, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

40.     A combined collective action/class action will result in an orderly and expeditious administration of the group members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

41.     Because Bremen Castings' compensation system which required and resulted in illegal wage deductions and uncompensated work by hourly-paid employees results in wage violations that trigger issues of both federal and state law, this cause of action presents the ideal factual scenario supporting the Court's exercise over the supplemental state law claims, as common state and federal law issues predominate.

## IV.  JURISDICTION AND VENUE

42.     This Court has jurisdiction over Trevino and Robbins' FLSA claims under 28 USC § 1331 as those FLSA claims raise questions of federal law. See 29 USC § 201 et seq.

---

[1]See *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 973-974 (7th Cir. 2011)

The Court has supplemental jurisdiction over Trevino and Robbins' Indiana law claims, which have a common basis in fact with their own and the other Plaintiff class members' FLSA claims.

43.    This Court is the appropriate venue for this cause of action as Trevino and Robbins worked or work for Bremen Castings at its Bremen, Marshall County, Indiana facility and most of the illegal activity took place in the Northern District of Indiana.  28 USC § 1391.

## V.  STATEMENT OF CLAIMS

### A.  Fair Labor Standards Act Claims (With Trevino and Robbins as FLSA Collective Action Representatives)

44.    Trevino and Robbins incorporate herein by reference paragraphs 1 through 43 above.

45.    Bremen Castings is an "enterprise," as that term is defined by the FLSA, covered by the overtime and minimum wage provisions of the FLSA.  Bremen Castings is an "employer," as that term is defined by the FLSA.  Bremen Castings is a "person" as that term is defined by the FLSA.

46.    Bremen Castings violated Trevino and Robbins' rights and the rights of all members of the Plaintiff Class to be properly paid overtime wages in a manner required by the FLSA.  Bremen Castings has committed overtime violations by failing to pay Trevino, Robbins and their similarly situated coworkers for all overtime hours of work, particularly as Bremen Castings was taking unlawful deductions (kickbacks) during weeks in which overtime was worked and Bremen Castings underpaid overtime wages based upon its illegal and non-neutral time record rounding scheme and refusal to pay employees from a first principal activity (donning) to a last principal activity (doffing).

47.    Bremen Castings has repeatedly violated the FLSA's overtime provisions by not

paying Trevino, Robbins and members of the Plaintiff Class at the required overtime compensation rate for all hours worked over 40 in a work week.

48.    Bremen Castings' failure to comply with the FLSA's provisions regarding overtime compensation is willful and without justification, and subjects Bremen Castings to a three year statute of limitations.

49.    Trevino, Robbins and the Plaintiff Class seek all available damages, including unpaid wages, unpaid overtime compensation, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which they may be entitled for Bremen Castings' violations of their rights under the Fair Labor Standards Act.

### B. Indiana Wage Payment Statute Claims (With Robbins as Rule 23 Class Representative)

50.    Robbins incorporates herein by reference paragraphs 1 through 49 above.

51.    Robbins has statutory wage claim arising under the Indiana Wage Payment Statute, I.C. 22-2-5 and he is the named Plaintiff who represents the same or similar interests of all current Bremen Castings hourly-paid employees and all of Bremen Castings' former hourly-paid employees who voluntarily resigned from employment.

52.    By way of this Claim, Robbins is seeking, individually and on behalf of members of the Plaintiff Class of current and former Bremen Castings employees (who voluntarily resigned from employment), all available damages, including all unpaid wages, all underpaid wages, all unlawfully deducted wages, all available liquidated (treble damages), all attorney's fees, costs and expenses, plus any other damage to which Robbins and his fellow Plaintiff Class members may be entitled pursuant to law.  Pursuant to I.C. 22-2-5-2, Robbins is seeking, individually and on behalf of members of the Plaintiff Class, payment of unpaid wages, underpaid wages, illegally deducted wages, plus all available damages, including, but not limited

17

to, double the amount of wages due as an additional monetary damage, plus all attorney's fees, costs and expenses. Robbins further expressly asserts and alleges that Bremen Castings acted in bad faith, and certainly was not acting or seeking to comply with the Indiana Wage Payment Statute in "good faith," when it intentionally created a time card rounding scheme that systematically took illegal wage deductions, skimmed time and wages from its employees, failed to pay employees from a first principal activity through a last principal activity each work day, all of which resulted in underpaid wages on a class-wide basis.

### C. Trevino's Individual Claim Under The Indiana Wage Claims Statute

53.     Trevino incorporates herein by reference paragraphs 1 through 52 above.

54.     Trevino was involuntarily terminated from employment by Bremen Castings. As such, Trevino's wage claims to recover illegally deducted amounts and unpaid and underpaid wages arise under the Indiana Wage Claims Statute, I.C. 22-2-9. Trevino obtained a letter from the Indiana Attorney General's Office dated March 28, 2018 which permits his attorneys to file this wage claim on Trevino's behalf as the Indiana Attorney General's "designee." To the extent he cannot do so in a class action context, Trevino is still pursuing any and all claims for damages under the Indiana Wage Claims Statute, I.C. 22-2-9, to recover illegally deducted wages, and to recover all unpaid and underpaid wages stemming from Bremen Castings' illegal rounding of time records.

55.     By way of this Claim, Trevino is seeking all available damages, including all unpaid wages, all underpaid wages, all illegally deducted wages, any available liquidated, punitive and/or treble damages, all attorney's fees, costs and expenses, plus any other damage to which Trevino may be entitled pursuant to law. Pursuant to I.C. 22-2-9-4, which incorporates I.C. 22-2-5-2, Trevino is seeking payment of unpaid wages, underpaid wages, illegally deducted

wages, plus all available damages, including, but not limited to, double the amount of wages due as an additional monetary damage, plus all attorney's fees, costs and expenses. Trevino further expressly asserts and alleges that Bremen Castings acted in bad faith, and certainly was not acting or seeking to comply with the Indiana Wage Payment Statute in "good faith," when it intentionally created a time card rounding scheme that systematically took illegal wage deductions, skimmed time and wages from its employees, failed to pay employees from a first principal activity through a last principal activity each work day, all of which resulted in underpaid wages to Trevino.

### VI.  PRAYER FOR RELIEF

WHEREFORE, Trevino and Robbins respectfully request that the Court enter judgment against Bremen Castings, and issue all available relief to them and to all eligible members of the Plaintiff Class, including, but not limited to, the following:

1.     All damages available under the FLSA, including all unpaid overtime wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

2.     All unpaid or underpaid wages;

3.     All statutory damages under I.C. 22-2-5-2, including, but not limited to, all liquidated damages, costs, attorney's fees and expenses and statutorily authorized damages;

4.     All statutory damages under I.C. 22-2-9-4(b), which incorporates I.C. 22-2-5-2, including, but not limited to, all liquidated damages, costs, attorney's fees and expenses and statutorily authorized damages;

5.     All reasonable attorney's fees and expenses;

6.      Costs;

7.      Prejudgment interest, if available; and

8.      Any and all other relief just and proper in the premises.

                              Respectfully submitted,

                              HUNT, HASSLER, KONDRAS & MILLER LLP

                              By/s/Robert P. Kondras, Jr.
                              Robert P. Kondras, Jr.
                              Attorney No. 18038-84
                              100 Cherry Street
                              Terre Haute, IN 47807
                              (812) 232-9691
                              Facsimile: (812) 234-2881
                              kondras@huntlawfirm.net

                              Robert J. Hunt
                              Attorney No. 30686-49
                              THE LAW OFFICE OF ROBERT J. HUNT, LLC
                              3091 E. 98th Street, Ste. 280
                              Indianapolis, IN 46280
                              Telephone:  (317) 743-0614
                              Facsimile:  (317) 743-0615
                              E-Mail: rob@indianawagelaw.com